The argument is 17-2139, Maxon v. Funai. Good morning, Your Honors. Matt Worzen for Maxon. We request that this Court reverse the District Court's holding of the patents in suit ineligible on a motion to dismiss. Heirs of substance and procedure would support such a reversal. On the substance, the inventive concept claimed here is decentralized provisioning of services to a plurality of devices, that is, equipping a device with the means by which a user may dictate what service will be enjoyed on what device at what time. The reason that these claims do— Your Honor, I just want to clarify one thing. It's my understanding that you have agreed that that concept you just mentioned is abstract. It is abstract, Your Honor. It is, however, an inventive concept because Maxon does not claim that abstract concept of decentralized provisioning of services, but rather the limitations of each claim taken as an ordered combination teaches one of ordinary skill in the art, as of the priority date, 2003, precisely how to achieve that novel and inventive result. The District Court below erroneously ignored procedural protections that are afforded any plaintiff on a motion to dismiss and any patentee throughout each stage of the litigation. The proper 101 analysis would be rooted in the claim language read in light of the specification from the perspective of one of ordinary skill in the art as of that priority date, 2003. What the District Court did here is quite different. The District Court instead analyzed a part of the specification which defined various components and held, based on the District Court's knowledge of computing networks, that all that was claimed here was generic computing components. That analysis is contrary to Rule 12, and that analysis is contrary to Section 282, which gives a presumption of validity to these patent claims at every stage of litigation unless overcome by clear and convincing evidence. If I could direct the Court's attention to Claim 8 of the 160 patent, page 36 of the appendix, I can walk through that claim and show the Court how these claims in fact do teach the inventive concept. The claim is directed to this abstract idea of a device sharing a plurality of services. It's decentralized service delivery to the device. The inventive concept, however, is that this device is equipped with the ability to dictate commands back to the service provider. And so how is that achieved? At the first element, we have the computer-readable medium. Now the District Court's... Can I ask, before you go on to the next point, isn't the notion of being able to dictate commands and accessibility and the like also abstract? Yes, Your Honor, however, these claims... So that can't be what's not routine and conventional. Something else has to be routine and conventional, doesn't it? You can't say what's not routine and conventional about this claim is the abstract idea itself. If that were the case, we would have found the patent in Ariosa eligible. I know it's a natural law, but I think the same thing would apply. They were the first people to discover that particular natural law, and it wasn't routine and conventional at all, but we still found it ineligible because it didn't do anything more than claim that abstract or natural law. So what here is something more than your decentralized system and your notions of dictating accessibility and the like, which are all abstract? Yes, and that is true that they're abstract on that general level, but then the claims teach one of ordinary skill in the art, well, how is this achieved? You have this abstract idea of dictating commands to the service provider, setting up a decentralized system. That is in and of itself abstract, however... How is telling somebody how to perform an abstract idea eligible? Because it had never been done before. And then how then would you distinguish Ariosa? It told people how to perform an abstract idea that had never been done before, an incredibly revolutionary idea that's kind of changed prenatal testing, but nevertheless, it was ineligible. Your Honor, forgive me, what was the procedural posture and how was that found ineligible? You know, you have to know our case better. Okay, yeah. Okay, well, here's my reply, is that Maxon goes beyond this abstract concept of command and control and shows one of ordinary skill precisely how to do it in a new way. And by the PTO, through an adversarial proceeding, a prosecution, issuing this patent, we have the presumption that this intrinsic record amounts to an inventive concept, and so getting back to the claim, the first element would be this computer-readable medium, which holds three things, defining the device, defining the personal network, and also a data, a credential that allows the device to communicate commands to the service provider. All of this language in the claim is then read in light of the specification, which details to one of ordinary skill in the art precisely how that is done. This device also has logic and a processor to take commands from the user of the device and to prepare what's called an inbound signaling word, which communicates all of that information that I just went over, that is the device, the personal network, this ability to communicate with the service provider, but also within it is the command. The command, do I want this service, do I not want this service? And then finally, a transceiver, which has the ability and the device equipped with the transceiver has... What's not routine and conventional about any of those things? You talked about a computer, a logic processor sending signals and commands and a transceiver. Those are all routine and conventional pieces of equipment implementing your abstract idea. They're routine and conventional in the sense if you describe them as generically as your read the claims, it defines specifically a specialized processor, a processor that writes an inbound signaling word. We do have the presumption of validity on our side and the patent office, by issuing this patent, after a rigorous process... Can you point out to me where you're claiming, so you think you're claiming you've invented a new processor, rather than just programming a conventional processor to do a new abstract idea? We claim a processor that used in a new way achieves a new result. And so that would be using it in this new way to achieve decentralized provisioning of services to a plurality of devices. And so we rely on the intrinsic record. That processor, just to take that as a limitation, that processor is taught in the specification. The claim language that teaches that processor is supported by that language in the specification. And that has been through the patent office. The patent office issued this patent claim, Claim A to the 160 Patent. Now what do we have below? What did Judge Feinerman do to hold that these claims are ineligible? Judge Feinerman analyzed the definitions, so for example, a processor. Although the patent doesn't define the generic processor. And so the district court assumed that it was a generic processor. So we have at the Rule 12 stage, the district court... How is it not a generic processor? What's in the specification? Because even what you're saying today, you keep talking about a processor programmed to do something, but you haven't said anything or pointed to anything that says this is a special kind of processor. It's just programmed to do a certain thing. Your Honor, it is a special... Are those two different things? No, this is a processor... So if I take a generic computer, you agree that that's a generic computer? Sure. If I program it, it's no longer a generic computer? If you program it, our argument goes, according to how the specification tells you to program it. And I can point the court, page 32 of the appendix... Wait, just answer my question. My question is, you start with the generic processor. Yes. Which you start with. Yes. You haven't invented any kind of new processor. This doesn't require some kind of equipment that's not off the shelf. That's correct. You could go, if Best Buy still existed, you could go to Best Buy and buy a computer processor. And then you program it according to what you say your patent does. Yes. In your view, that creates a new processor? In this case, it does. Is that consistent with our case law in 112-6 paragraph that talks about specialized computers when you're talking about corresponding structure in the specification? And if there's a specific algorithm disclosed, it becomes a specialized computer versus a generic computer. Is that what you're relying on for this argument? Yes, I think in a sense. And just to respond directly to the question with the written description, we would rely, for example, on column 6 of the 160 patent. This is page 32 of the appendix. And beginning at line 31, it describes the processor preparing this inbound signaling word. And so it is not, and you have cases that don't pass step 2 of the Alice analysis because, for example, what is claimed is a processor acting like a generic processor. But that is not what's claimed here. What is specifically claimed is a processor that prepares this inbound signaling word which identifies the device within a personal network and gives a command to the service provider. You're into your rebuttal. Thank you. May I please accord? Jumping right to the point that was last addressed, the inbound signaling word, that's something that, it's novel language, we don't see it anywhere, and it seems to be intrinsic to what this new argument of making this specialized computer, generic computer somehow specialized. But that even falls apart when you look at column 6 at line 40 to 41, where, quote, the specific format of the ISW, inbound signaling word, 310, is not integral to this invention. There is nothing here other than an abstract concept. This is a unique case because the party asserting the patent has actually asserted that it's an abstract concept. Not just tried to defend it, but asserted it is abstract. And then accused, present company, of committing the cardinal sin of importing limitations from the specification by relying upon what is defined in column 2 as, quote, the following description includes definitions of selected terms used throughout the disclosure. This starts out as a broad abstract concept and then catapults into extraordinary preemptive areas that we haven't seen in a lot of the recent cases. An address defined on column 2 of the 160, the appendix, page 30, the address can be not limited to one or more network accessible addresses, device identifiers, telephone numbers, IP addresses, URL, FTP locations, email addresses, names, a distribution list, including one or more addresses, even down to a postal address. The computer-readable media. Starts on column 2, line 55. I won't bore you with the reading of it. But the best one of all of these is the logic. Because if there was something that could actually turn a generic computer into a specialized computer, it would be the logic. And those are the cases, like the IGT, where you have, like, description of an algorithm. Here, the logic as used herein, and this is on page 31 of the appendix, column 3, starting on line 5. Quote logic, close quote, as used herein, includes but is not limited to hardware, firmware, software, and or a combination of each of these to perform functions or an action or to cause a function or action from another component. That is, by definition, the most abstract of concepts that I've seen come before this court in any decision where even the logic is described in terms of performing something that is a function to be performed. The only thing that ends up having to be, you know, a question is, did the district court somehow not interpret things in the light most favorable? Well, the only thing we have in that record for that purpose is, we have the court's decision. The court sets out the proper, starting on appendix 1, and bridging appendix 1 and appendix 2, sets forth the proper standard under the law, concluding that the facts are set forth as favorably to Maxon as those materials allow. The court then went through and performed both steps of the analysis. The first one was conceded. With regard to representative claims, the court found that the claims, any argument had been waived because no argument had been made otherwise in response to the plaintiff's arguments, the respondent's arguments. And then the district court went through on the second step and searched for anything in this description which could say these were anything other than conventional. The only conclusion that the district court could logically reach when these long, exhaustive recitations of conventional things were recited was that they were, in fact, conventional. The only part that the district court did not cite to, and I just wish to point to the Federal Circuit for your benefit, is that on column 6, on page 32 of the 160, on column 6 starting on line 45, although not defined as, quote, a user interface, it states that a user can initiate a transmission in any variety of ways, including but not limited to using an input device such as a keyboard, a keypad or keyboard, speaking into a microphone, pushing a button, using a pointing device, et cetera. Everything in here is generic, and at best all these claims do is act upon a generic concept, an abstract concept to result in an abstract claim. Are there any questions? Thank you. Thank you. I'd like to pick up on what my friend just said in characterizing the district court's decision, said that the only logical place that the court could end up would be that this is simply conventional computing components. It's not about logic. It's about evidence, and what the district court should have come up with was intrinsic evidence to establish that these are generic computing components used in a generic manner. Other cases do this, the intellectual ventures case, the content extraction case. We are not saying that no patents can be found ineligible on a motion to dismiss. However, there has to be intrinsic evidence to support an order holding patents ineligible by clear and convincing evidence. It has to be clear and convincing that these are just generic computing components. It cannot be founded on the logic of a district court judge perceiving these elements in 2017. I would also emphasize that the district court, and now my friend on the other side, refuses to give any attention to the claim language or to the specification, specifically the specification with reference to the figures, the meat of the specification, where the invention, where the inventive concept is taught. We ask for a reversal. If there are no more questions, I'll yield my time. Thank you. We thank both sides. The case is submitted. That concludes our proceeding for this morning. All rise. The honorable court is adjourned until tomorrow morning. It's at o'clock a.m.